## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

IN RE: STEVEN JACK KIKUT, Debtor        No. 5:09-bk-71717

       Ch. 7

## OPINION AND ORDER

Before the Court is the debtor's *Motion For Contempt For Violation of Discharge Order*, filed on January 19, 2017. In his motion, the debtor asks the Court to find that Ocwen Loan Servicing, LLC [Ocwen] and Fay Servicing LLC [Fay] violated the bankruptcy code's discharge injunction (11 U.S.C. § 524(a)(2)), the Arkansas Fair Debt Collection Practices Act (Ark. Code Ann. § 17-24-504), and the Federal Fair Debt Collection Practices Act (15 U.S.C. § 1692c). After a number of continuances, the Court set the motion for hearing on November 21, 2017. Prior to the hearing, on November 16, 2017, the Court granted in part Ocwen's and Fay's respective motions for summary judgment and dismissed the debtor's fair debt collection practices claims for lack of jurisdiction.

The discharge injunction under § 524(a)(2) replaces the automatic stay that is in effect during a debtor's bankruptcy case and operates as a permanent injunction against the enforcement of any discharged debts when the debtor receives a discharge. *In re Waswick*, 212 B.R. 350, 352 (Bankr. D.N.D. 1997). A willful violation of the injunction warrants a finding of civil contempt. *In re Goodfellow*, 298 B.R. 358, 361 (Bankr. N.D. Iowa 2003) (citing *In re Waswick*, 212 B.R. at 352); *see also Koehler v. Grant*, 213 B.R. 567, 570 (B.A.P. 8th Cir. 1997); *Gakinya v. Columbia College* (*In re Gakinya*), 364 B.R. 366, 370 (Bankr. W.D. Mo. 2007) (violations of discharge injunction punishable by contempt). The burden is on the debtor to show by clear and convincing evidence that the creditor (1) had knowledge of the debtor's discharge and (2) willfully violated the discharge order by continuing its collection activities. *In re Waswick*, 212 B.R. at 352; *Koehler*, 213 B.R. at 570.

A brief history of the case is warranted. The debtor filed his voluntary chapter 7 petition on April 7, 2009. At the time, Bank of America held the mortgage on the debtor's residence. The debtor stated on his Statement of Intention the he would "retain and pay" Bank of America without indicating that he would enter into a reaffirmation agreement for the debt. The debtor received his discharge on July 13, 2009.[1] In either December 2011 or January 2012 the debtor was "locked out" of his house, presumably by Bank of America. In October 2012, Bank of America transferred the mortgage loan to Ocwen for servicing. During the time that Ocwen was servicing the loan, Ocwen would send account statements, delinquency information, and escrow statements to the debtor.[2] In July 2014, Bank of America began a foreclosure procedure against the property with notice to the debtor. On October 27, 2014, Ocwen issued its Form 1099-A: Acquisition or Abandonment of Secured Property to the debtor, which is the date the property was initially sold at foreclosure. A mortgagee's deed was entered on November 4, 2014, but for some reason was later rescinded on December 29, 2015.

After the mortgagee's deed was rescinded, Ocwen again began sending account statements and delinquency information to the debtor. In June 2016, Bank of America began a second foreclosure procedure against the property. On July 12, 2016, shortly after the second foreclosure procedure started, Ocwen transferred the servicing of the mortgage loan to Fay. Despite the transfer, Ocwen sent another account statement to the

---

[1] At the beginning of his direct examination, the debtor testified that he believed the discharge "frees me from all my debt–mortgage and everything." The debtor later testified during cross-examination that he had not made any payments since 2009.

[2] Included within the mailings were statements that advised the debtor that "if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally." Each communication that the debtor introduced included that statement or a similar one from Ocwen.

Fay included a similar statement on its mailings: "To the extent your original obligation was discharged, or is subject to an automatic stay under the United States Bankruptcy Code, this is being provided for informational purposes only and does not constitute an attempt to collect a debt or impose personal liability."

debtor on July 18, 2016, and updated delinquency information on August 1, 2016.  On September 14, 2016, a second mortgagee's deed was entered transferring interest in the property to Christiana Trust as trustee of ARLP Trust 5.  On the same day, Fay sent the debtor an escrow statement and a "second and final notice" for the debtor to provide hazard insurance information to Fay with the statement that the debtor "must pay us for any period during which the insurance we buy is in effect for which you do not have insurance."

On October 19, 2016, the debtor filed his motion to reopen his bankruptcy case.[3]  On November 22, 2016, the Court granted the debtor's motion and on January 19, 2017, the debtor filed his *Motion For Contempt For Violation of Discharge Order*.

As stated earlier, the burden is on the debtor to show by clear and convincing evidence that the creditor (1) had knowledge of the debtor's discharge and (2) willfully violated the discharge order by continuing its collection activities.  Although the Court has ample evidence with which to consider Ocwen's and Fay's alleged violative collection activity, the Court has no evidence whatsoever–much less "clear and convincing" evidence–that either Ocwen or Fay had knowledge of the debtor's discharge, the first of the two elements that must be proven.  The debtor testified a number of times that whenever he would call Ocwen or Ocwen would call him, he told Ocwen that he had filed bankruptcy.[4]  However, at no point during the trial did the debtor ever state that he told Ocwen or Fay *that he had received a discharge*.  Bank of America would have known about the debtor's discharge because it is listed specifically as a service recipient of the Court's discharge order.  However, the knowledge of Bank of America is not imputed to its servicer.  *Siharath v. Citifinancial Serv., Inc.* (*In re Siharath*), 285 B.R. 299, 304

---

[3]  Despite knowing that he was going to bring an action against both Ocwen and Fay, he did not provide either entity with a copy of his motion to reopen the case.

[4]  The Court is not able to determine the nature of all of the phone calls except that in some calls the debtor was attempting to negotiate repayment, purchase, or refinance of the property after the discharge order was entered.

(Bankr. D. Minn. 2002); *see also S.O.G.-San Ore-Gardner v. Missouri Pacific R.R. Co.*, 658 F.2d 562, 567 (8th Cir. 1981) ("it is well settled that an agent may rely upon the representations of his principal and that the principal's undisclosed knowledge is not imputed to him").  None of the parties called the Ocwen representative as a witness and whatever information Bank of America may have given to Ocwen about the debtor's case was not introduced at trial.

Having failed to meet his burden of proving by clear and convincing evidence that Ocwen or Fay had knowledge of the debtor's discharge, the Court must deny the debtor's motion to hold Ocwen and Fay in contempt for violating the Court's discharge order.

IT IS SO ORDERED.

Ben Barry
United States Bankruptcy Judge
Dated:   12/11/2017

cc:   Theresa L. Pockrus
      Paul E. Gregory
      Charles T. Coleman
      Johnathan D. Horton
      James M. McPherson

4